## Lowry, Appellant, *v.* Forest City Borough.

*Boroughs—Resolution—Expenditure of money—Ordinance—Borough building—Injunction—Preliminary injunction—Dissolution of injunction—Equity.*

A preliminary injunction restraining the expenditure of public money in making certain alterations upon a municipal building of a borough, will be dissolved, where it appears that although the alterations were authorized in the first place by a mere resolution of the council, yet, after the injunction was granted an ordinance in due form was passed ratifying the previous resolution, and it also appears that the alterations were proper, and that the expenditure of money would materially increase the rentals from the portion of the building not used for municipal purposes.

Argued March 1, 1909.   Appeal, No. 72, March T., 1909, by plaintiff, from decree of C. P. Susquehanna Co., Aug. T., 1908, No. 45, dissolving preliminary injunction in case of S. E. Lowry v. Forest City Borough et al.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ.   Affirmed.

Motion to dissolve preliminary injunction.

LITTLE, P. J., filed the following opinion.

The borough of Forest City, Susquehanna county, was incorporated August 25, 1888, under the provisions of the general borough Act of April 3, 1851, P. L. 320, and its supplements.

During the year 1900 proceedings were instituted by the borough of Forest City, under the provisions of the Act of April 20, 1874, P. L. 65, for the erection of a municipal building in said borough.   The proposition was submitted to the electors, and after an affirmative vote was polled, the construction of the building was undertaken and completed some time during the year 1902.   The building contained three stories and a basement, and was much larger than was required for municipal purposes at the time of its completion, or is required at the present time.   A large portion of the building was originally designed and constructed for the purpose of renting, and from the time of its completion and occupancy, all of the third floor, a greater portion of the second floor and a part of the

first floor has been rented for business purposes, and the rent derived therefrom has been collected by the council, and made a part of the general fund of the borough.

A part of the main floor fronting on Main street had been occupied by the Enterprise Hose Company, an organization of firemen in said borough. On February 24, 1908, the Enterprise Hose Company presented a petition to council (as shown by the members of the council of that date) in reference to changes in the municipal building and it was testified by W. J. McLaughlin, a member of the council, that there had been no discussion in council with reference to said changes until after the presentation of this petition. Upon receipt of the communication from the hose company a committee was appointed to confer with the postmaster. After negotiations had continued for some time an architect was employed, and on April 27, 1908, the council definitely determined to make the contemplated alterations, to remove the hose company to quarters in the rear of the building, and reconstruct the room vacated by the hose company for rent.

The contract, on motion of the council, was let to Box and Holt, two of the defendants, and the alterations were commenced under the supervision of the building committee.

The front of the room occupied by the hose company had been taken down, partitions removed and the work was well under way, when the plaintiff, on May 1, 1908, filed this bill in equity and a preliminary injunction was granted restraining further operations until an ordinance had been passed and approved by the burgess as required by law.

The first amendment was subsequently filed praying restraints of all proceedings by virtue of action taken by council of April 27. Defendants answered that on May 11, 1908, council adopted a resolution ratifying and approving its previous action of April 27, and on May 18, passed an ordinance authorizing the alterations in the municipal building; that both the resolution and ordinance were duly and legally adopted, approved by the burgess, and published and advertised as required by law.

From the testimony taken it is apparent that the members

of the council were acting in the utmost good faith, not proceeding with the alterations without due and proper deliberation extending over a period of approximately two months; and further that it is manifestly for the interest of the taxpayers of said borough of Forest City that the alterations be made, and all the room in the municipal building utilized. It also appears that by the expenditure of $450 the building will be sufficient to accommodate the borough for all municipal purposes, and increase the revenue derived therefrom from $25.00 to $30.00 per month, and that such expense is necessary to properly appropriate the building to the best advantage.

This case presents a unique situation. The present council of the borough of Forest City when elected to office, assumed, among other duties, the care and disposal of the vacant space in the borough building. These rooms were rented as had been done by their predecessors in office. When the alterations were first contemplated the council evidently had two purposes in mind; first: the removal of the hose room to the rear of the building, which seems to have been undertaken at the instance of the hose company; and second: the proper utilization of the room to be vacated by them.

When the preliminary injunction was granted the work had advanced to such an extent that it will incur the same expense to restore the building to its original condition, as it will to complete the alterations as testified by Mr. Box, one of the defendants and contractors. Assuming that the building must be restored, if at the expense of the borough it would be an expenditure of public money without any possible return to the public, and a loss to the taxpayers; or if it is restored at the expense of the members of council and contractors, this likewise would create a severe hardship, and impose a penalty upon citizens acting in a representative capacity and in good faith.

Plaintiff in the original bill, and more specifically in the first amendment, sets forth that he and others, taxpayers, will suffer irreparable injury if the work in making the alterations is not restrained. At the hearing no evidence was introduced to establish this allegation or to show in what manner any injury will be sustained; on the other hand, it was proven by the testi-

mony offered on the part of the defendants, that the proposed quarters for the use of the hose company will be sufficient, that the public welfare will be subserved by the removal of a possible danger, and that the revenue received will pay the expense incurred in making the alterations in less than two years, and thereafter bring to the borough a substantial gain.

Learned counsel for the plaintiff strenuously contend that the action of the council of April 27, not only is void in law, but the resolution of May 11, and ordinance of May 18, provides for the expenditure of public money for a private purpose and is therefore an excession of power delegated to the council under the law of Pennsylvania and ultra vires. The action of the council of April 27 was subsequently ratified by the council. This can be lawfully done provided the act in awarding the contract is within the corporate powers of the municipality: In re Millvale Boro., 162 Pa. 374; Tarentum Boro. v. Moorhead, 26 Pa. Superior Ct. 273; Silsby Mfg. Co. v. Allentown, 153 Pa. 319.

This·brings us to the fundamental question in the case, to wit: the power of the council in appropriating money of the borough to make the proposed alterations in the municipal building. It must be remembered that the alterations and the expenditure of public money on account thereof, involved the preparation of a room for the use of the hose company, an organization for which it was not only the right, but the duty of the council to provide suitable accommodations in the municipal building. It was conceded at the argument that a borough having excess room in its municipal building, and not required for municipal purposes, would have the right to rent the same within the sound discretion of the borough council.

If this proposition is correct, it necessarily follows that the council would have the power to make any reasonable repairs or alterations to the building in order to keep said rooms in a tenantable condition.

This has been held to be the law in other jurisdictions, but after an exhaustive research, I am unable to find any case where this question has been before the Pennsylvania courts. In the case of Bates v. Bassett, 1 Lawyers' Reports Annotated,

166, a decision was rendered by the supreme court of Vermont and the facts were similar to the case at bar. In the opinion the court said: "The town has no right as a primary purpose to erect buildings to rent, but if in the erection of its hall for its proper municipal uses it conceives that it will lighten its burdens to rent part of its building whereby an income is gained, no sound reason is suggested why it should not do so." French v. Inhabitants of Quincy, a Massachusetts case, reported in 85 Mass. 9, was an action instituted to recover certain property devised to the borough of Quincy to be used for municipal purpose on the ground that the borough had misappropriated the property by renting a certain portion of the town building erected thereon. It was held: "The court are of the opinion that a town having in its town house rooms which it had authority to construct as part of such building, and not having occasion to use them for the time being, is not obliged to keep them unoccupied, but may derive a revenue from them by renting them, or may allow them to be used gratuitously; such a use of the property is within its legal authority. And if this be so, the condition of the deed is not broken, for it cannot be construed more strictly than to require of the town to maintain a town house on the land which shall not be put to any illegal and unauthorized use." In Spaulding v. City of Lowell, a Massachusetts case, reported in 40 Mass. 71, the court said: "It is further contended in the present case, that even if the town had authority to assess money for building a market house, yet that it would not justify the present tax because a part of the building was appropriated to other objects. If this had been a colorable act, under the pretense of exercising a legal power looking to other and distinct objects beyond the scope of the principal one, it might be treated as an abuse of power and a nullity.

" But we perceive no evidence to justify such a conclusion in the present case. The building of a market house was the principal and leading object, and everything else seems to have been incidental and subordinate; we cannot, therefore, say that it was such an excess of authority as to invalidate the acts which they might rightfully do."

In Kingman v. Brockton, 153 Mass. 255 (26 N. E. Repr. 998), the principle decided in Spaulding v. Lowell, 40 Mass. 71, and French v. Quincy, 85 Mass. 9, was approved.   In further commenting on the same, the court say: "But there may be some danger of extending this doctrine too far.   Should a question arise whether a contemplated building exceeded what was allowable with reference to legitimate needs such question would have to be determined upon its own merits, and the good faith of the transaction, and the soundness of the judgment shown in providing for future wants might have to be considered."

Therefore being of the opinion that the council of the borough of Forest City, under the conditions existing at the time action was taken, was justified in making the proposed alterations in the municipal building in said borough, the preliminary injunction must be dissolved.

It may be proper to state that while the pleadings are somewhat confused, the court considered it advisable to dispose of all the questions involved in the controversy in the pending proceeding, rather than entertain a second bill in equity.

Now, August 10, 1908, the preliminary injunction heretofore granted is dissolved

*Error assigned* was the decree of the court.

*George W. Maxey*, with him *Edwin C. Amerman*, for appellant.

*T. J. Davies*, with him *William J. Maxey*, for appellees.

PER CURIAM, April 19, 1909:

This is an appeal by the plaintiff from an interlocutory decree dissolving a preliminary injunction.   In view of the facts set forth in the findings and opinion of the learned judge below, and particularly the fact that after the injunction was granted an ordinance in due form was regularly passed whereby the prior action of council was ratified, we are not convinced that the court erred.

The decree is affirmed at the cost of the appellant.