

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 14, 1948

Hon. Norton Fox
County Attorney
Limestone County
Groesbeck, Texas

Opinion No. V-681

Re: Right of inspection
of public records of
school districts.

Dear Sir:

Your request for opinion reads in part as follows:

"Does a person, who is a citizen, parent and tax payer in the Groesbeck Independent School District, Texas, have the right to inspect the financial records including ledgers, accounts, vouchers, records of disbursements, etc. kept by the school trustees of said school."

School districts are quasi public corporations which derive their powers by delegation from the State. 37 Tex. Jur. p. 864. Independent school districts, like the Groesbeck district, are so denominated because they are managed and controlled by a board of trustees independent of the county government. They are local public corporations created for school purposes alone. 37 Tex. Jur. 873. A school district's board of trustees is a creature of statute and has only such powers as are conferred upon it and such implied powers as are necessary to execute such express powers. Royce Independent School District v. Reinhardt, 159 S.W. 1010. Thus, a school trustee is a public officer and every essential element of an office is embraced in the powers conferred on him. Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120; 37 Tex. Jur. 935.

Article 2779, V. C. S., provides that a majority of the independent school district board shall constitute a quorum to do business, and they shall choose a secretary, a treasurer, assessor and collector of taxes, and other necessary officers and committees. It follows that minutes of the orders, resolutions, rules, and other official actions of the board need be recorded and

kept by the board, by its designated secretary or other officers to reflect that the public school district's business was executed by the board, a quorum being present. These records of the official actions of the board constitute public records concerning the independent school district, its officers and its official business.

Sections 17 and 18 of Article 689a, require the preparation of a school budget by boards of trustees of independent and common school districts covering all proposed expenditures of the current fiscal year, and when adopted by the board, further require that a copy thereof shall be filed in the office of the County Clerk of the county or counties in which such district is situated.

Article 2833, V. C. S., provides that each treasurer receiving or having control of any school fund of an independent school district shall keep a full and separate itemized account with each of the different classes of school funds coming into his hands, and shall on or before the first day of October of each year file with the board of trustees of each independent school district and with the State Superintendent an itemized report of the receipts and disbursements of the school funds for the preceding school year ending August 31, which report shall be on a form prescribed and furnished by the Department of Education. The board of trustees must notify the State Superintendent of their approval of said report within thirty days after receipt of same, should same be approved. It further requires that all vouchers showing items of the report shall be filed with the board of trustees, and the State Superintendent may demand same when passing on said report or for the purpose of investigating same.

Clearly the budget prepared by the board under Article 689a, and the reports and vouchers required to be filed under Article 2833, also constitute public financial records of boards of trustees of a school district.

Section 1 of Article 2833a, V. C. S., provides that all financial reports made by or for school districts, either independent or common, or by their officers, agents or employees to the State Superintendent or to the Department of Education shall be made on forms prescribed or approved by the State Auditor.

Hon. Norton Fox, page 3  (V-681)

In Articles 1653 and 1652, V. C. S., the county auditor is authorized to have continual access to, and it is made his duty to inquire into the correctness of all the financial ledgers of all the common school districts of the county and all the vouchers given by the trustees thereof.  Attorney General's Opinions Nos. 0-2734, 0-3660

Article 2684, V. C. S., requires the secretary of the board of county school trustees to keep a true and correct record of all the proceedings of said county school trustees in a well-bound book, "which shall be kept open to public inspection".

Under Article 2912 teachers in Texas free public schools shall keep daily records, in which the attendance, name, ages and studies of all pupils shall be recorded, and such other matters as may be prescribed by the State Superintendent.  "Said registers shall be open to public inspection of all parents, school officers, and all other persons who may be interested."

Although inspection of certain records, financial ledgers, registers, vouchers, and other reports of school districts have been provided for in the statutes above enumerated, there is no statute giving citizens, parents, or taxpayers the general right of inspection of all books, records and papers of a school district, independent or common.

We quote from 36 Tex. Jur. Sec. 103, at page 593:

"In General. - Since there is no statute or constitutional provision giving citizens or taxpayers the general right to inspect all books, records and papers of county officers, the existence of the right must be determined by the common law.  Nor is this common law right restricted by a statute giving to the public an absolute right to inspect certain of such books and records. . ."

The rule of law and principles propounded in Palacios v. Corbett, 172 S.W. 777 (writ refused), with reference to the right of inspection of records of county officers by citizens and taxpayers of the county, are equally applicable to the right of parents, taxpayers, and citizens of a school district to inspect the records

kept by his school district board.  In that case the San
Antonio Court of Civil Appeals concluded that the opinion
of the Supreme Court of Tennessee in State, ex rel Wel-
ford v. Williams, 75 S.W. 948, constituted the best state-
ment of the rule of law which should be applied to this
character of case.  It quotes from said case as follows:

> "..In theory the right of examination
> is absolute, but in practice it is at last
> only a matter of discretion, because such
> application is likely at any time to be re-
> fused on the part of the custodian of the
> books and papers sought to be examined, and
> then the right must be forced by mandamus,
> and this writ is not of absolute right, but
> merely of discretion, to be awarded only in
> a proper case; the facts claimed as authoriz-
> ing its issuance to be judged of in every
> case by the court, and the writ to be award-
> ed or withheld upon a consideration of all
> the circumstances presented.  So, while the
> right is, in theory, absolute, yet it is in
> practice so limited by the remedy necessary
> for its enforcement as that it can be denom-
> inated only a 'qualified right'.  The right
> to an examination for a special purpose, as,
> for example, to obtain specific information
> to use in a litigation between the applicant
> and third parties, or between the applicant
> and the corporation, and the like cases,
> while not, in principle, standing upon high-
> er grounds, yet is the more easily granta-
> ble, because it does not involve so much
> time, and so much inconvenience to the cus-
> todian of the books and papers, and so much
> interruption of business, as in case of a
> general examination.  Yet it cannot be
> doubted, under a state of facts showing
> it to be important to the public inter-
> est that the general examination of the
> books of a municipality should be had, that
> the court should allow such examination
> at the suit of one who is a citizen and tax-
> payer of the corporation.  The right rests,
> not only on the ground that the books are
> public books, but also on the same principle
> that authorizes a taxpayer to enjoin the en-
> forcement of illegal contracts entered into
> by the municipality, county, or state, for

the protection of the applicant and all other
taxpayers from illegal burdens.  And it is
obvious that, in making and enforcing such
application, the taxpayer acts, in a very
real sense, not only for himself, but for all
other taxpayers, and acts, therefore, in the
capacity, as it were, of a trustee for all.
It must be admitted, also, that the exercise
of such power, if prudently and carefully
guarded, cannot be otherwise than salutary,
because the knowledge that it can be exer-
cised by a citizen and taxpayer, and may be
exercised when the public good shall seem,
on sound reasons, to demand it, cannot re-
sult otherwise than in producing an added
sense of responsibility in those who admin-
ister the affairs of municipal corporations,
and in inducing a greater carefulness in the
discharge of the trusts imposed upon them
by their fellow citizens under the sanc-
tions of law."

In the absence of statutes giving the right to
parents, citizens, and taxpayers to inspect the records
kept by school district trustees and its officers, and
in the light of the rules of law applied in the Corbett
case to an analagous character of cases, it is our opin-
ion that a parent, citizen and taxpayer of a school dis-
trict has the right to inspect the records, financial or
otherwise, kept by the school trustees, public officials
of his school district.  The Palacios-Corbett case held
that a citizen and taxpayer of a county who had good
cause to believe there has been misapplication of county
funds, and is interested in the inspection because it may
result in a decrease of his assessment, is entitled to a
writ of mandamus to compel county officers to allow in-
spection of their books to discover the misapplication.

## SUMMARY

Certain school records are made avail-
able for public inspection by statute, and,
if there is no such statute, the public gen-
erally has the common law right to inspect
such public records.  The courts, however,
exercise discretion in the granting of a

Hon. Norton Fox, page 6  (V-681)

mandamus to compel such inspection. The right of inspection is therefore a "qualified right." Palacios v. Corbett, 172 S.W. 777, writ refused.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Chester E. Ollison*

Chester E. Ollison
Assistant

CEO:mw

APPROVED:

*Price Daniel*
ATTORNEY GENERAL